IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PAMELA F. BEILER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13cv869 |
| | ) | |
| GC SERVICES L.P., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion of Defendant GC Services Limited Partnership ("GCS") to stay this case under the primary jurisdiction doctrine. (Doc. 20.) Plaintiff Pamela F. Beiler filed a brief in opposition to this motion. (Doc. 25.) GCS did not file a reply brief. Having considered the briefs and attached exhibits, including the various petitions filed with the Federal Communications Commission ("FCC"), the court declines to stay this matter at this time.

I.  BACKGROUND

The facts as alleged in the complaint and exhibits attached to Beiler's brief in this matter tend to show the following.

Beiler owns two cell phones: one she uses as her own, and the other she provided to her husband, Scott Foster, for his own personal use. (Doc. 25-1 ¶ 4; Doc. 25-2 ¶ 4.) Beiler is the sole subscriber, through Verizon Wireless, for the phone numbers

assigned to each phone. (Compl. ¶ 26.) Unknown to Beiler, Foster applied for two credit cards. (Id. ¶ 20.) When he defaulted on both, GCS was engaged to collect on the debts. (Id. ¶ 21.) GCS then allegedly called both Beiler and her husband's cell phones over three hundred times, trying to collect on the debts. (Id. ¶ 25.) These calls were allegedly made by GCS using an automatic telephone dialing system ("ATDS"). (Id. ¶ 27.)

Beiler brings this lawsuit under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 et seq., alleging in count one that GCS unlawfully called her cell phones using an ATDS, and in count two that GCS unlawfully called her cell phones using an artificial or prerecorded voice. (Compl. ¶¶ 45-54.) GCS answered, denying these allegations and that it used an ATDS or artificial voice to call Beiler's phones. (Am. Answer ¶¶ 27-28.) GCS now asks this court to stay these proceedings, pending a referral of certain matters to the FCC, under the primary jurisdiction doctrine.

The litigants have followed up the briefing on the motion to stay with various other filings. GCS filed a suggestion of subsequently decided authority. (Doc. 27.) Beiler has moved to strike this suggestion. (Doc. 28.) Beiler then filed a notice of the withdrawal of the Communication Innovators petition (Doc. 30), considered below, which is mostly redundant with GCS's

suggestion of subsequently decided authority that Beiler has moved to strike. Beiler has also filed her own suggestion of subsequently decided authority. (Doc. 31.)

**II. ANALYSIS**

**A. The Primary Jurisdiction Doctrine**

The primary jurisdiction doctrine gives federal courts discretion to "refer" a matter to a federal agency, "staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." Reiter v. Cooper, 507 U.S. 258, 268 (1993). Despite the doctrine's name, a stay under the primary jurisdiction doctrine does not defeat a court's jurisdiction; instead, the court has the authority to retain jurisdiction pending some resolution by the agency, or, "if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." Id. at 268–69.

The primary jurisdiction doctrine serves to promote a "proper" relationship "between the courts and administrative agencies charged with particular regulatory duties." United States v. W. Pac. R.R. Co., 352 U.S. 59, 63 (1956). The doctrine coordinates the actions of the judicial and executive branches "by taking advantage of agency expertise and referring issues of fact not within the conventional experience of judges or cases which require the exercise of administrative discretion." Envtl. Tech. Council v. Sierra Club, 98 F.3d 774,

789 (4th Cir. 1996).

The decision to refer a matter under the doctrine rests on the particular circumstances of a specific case. As the Supreme Court has explained, "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." W. Pac. R.R. Co., 352 U.S. at 64. The Court has previously stressed two factors as helpful in the calculus: "the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions" as well as "the expert and specialized knowledge of the agencies involved." Id.; accord Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006). Given the fluidity in the doctrine, decisions to refer a matter are reviewed for abuse of discretion. Envtl. Tech. Council, 98 F.3d at 789 n.24.

### B. The Petitions for FCC Rulemaking

In support of its argument for a stay, GCS primarily asks this court to consider four petitions that have already been filed with the FCC seeking rule-making on specific issues by that agency. Some courts have favored referral when a matter has already been submitted to the agency. See, e.g., Ellis v. Tribune Television Co., 443 F.3d 71, 89 (2d Cir. 2006).

First, GCS directs the court to a petition for rulemaking filed by Communication Innovators.[1] Communication Innovators, Petition for Declaratory Ruling, CG Docket No. 02-278, filed June 7, 2012, available at http://apps.fcc.gov/ecfs/document/view.action?id=7021922048. This petition asked the FCC to rule that a predictive dialer not used for telemarketing purposes and without the "current ability to generate and dial random or sequential numbers" is not an ATDS under the TCPA. Id. at 1. The court finds this petition irrelevant given that it has now been withdrawn. See Communication Innovators, Withdrawal of Petition, CG Docket No. 02-278, filed July 14, 2012, available at http://apps.fcc.gov/ecfs/document/view.action?id=7521394094.

Second, GCS asks this court to consider a petition filed by GroupMe, Inc. GroupMe, Inc., Petition for Expedited Declaratory Ruling and Clarification, CG Docket No. 02-278, filed Mar. 1, 2012, available at http://apps.fcc.gov/ecfs/document/view.action?id=7021898887.

---

[1] On October 15, 2014, GCS filed a suggestion of subsequently decided authority, noting that Communication Innovators had withdrawn this petition. (Doc. 27.) In its withdrawal, Communication Innovators pointed to other pending petitions putting the same issues before the FCC with more recent records. However, the court finds that these other petitions also do not warrant a stay. See infra. Furthermore, in its same suggestion, GCS cites to another pending petition before the FCC filed by the Consumer Bankers Association, which seeks a clarification of the term "called party." (Doc. 27.) In reaching its decision, the court has considered this petition to the same extent it has also considered the ACA International and YouMail petitions. See infra.

Like Communication Innovators, GroupMe petitioned the FCC to limit the scope of the term "capacity" as it relates to ATDSs, in addition to another issue not relevant to this matter. See id. at i; Doc. 21 at 6-7. However, the issue relevant to this case, pertaining to "capacity," was later withdrawn by GroupMe, and, therefore, the petition itself and the FCC's later decision on this petition bear little, if any, relevance to this case. See GroupMe, Inc., 29 FCC Rcd. 3442, 2014 WL 1266074, at *1 n.2 (2014).

Unlike these first two, the third and fourth petitions cited by GCS are actually still pending and involve issues possibly relevant to this case. A petition by YouMail, Inc., asks the FCC to rule that "only equipment that has a current capacity to store and produce telephone numbers to be called using a random or sequential number generator – and is currently being used for that purpose – should be considered an ATDS." YouMail, Inc., Petition for Expedited Declaratory Ruling at 11, GC Docket No. 02-278, filed April 19, 2013, available at http://apps.fcc.gov/ecfs/document/view.action?id=7022288462. The final petition, by ACA International, is the most expansive, requesting the FCC to

> (1) confirm that not all predictive dialers are categorically automatic telephone dialing systems ("ATDS" or "autodialers"); (2) confirm that "capacity" under the TCPA means present ability; (3) clarify that prior express consent attaches to the person incurring

6

a debt, and not the specific telephone number provided
by the debtor at the time a debt was incurred; and (4)
establish a safe harbor for autodialed "wrong number"
non-telemarketing calls to wireless numbers.

ACA International, Petition for Rulemaking at i-ii, CG Docket No. 02-278, filed Jan. 31, 2014, available at http://apps.fcc.gov/ecfs/document/view.action?id=7521069730.

Therefore, to the extent that pending motions are relevant to staying a case under the primary jurisdiction doctrine, GCS has pointed to two such petitions that may actually relate to this case.

C. **Agency Expertise and the Need for Uniformity**

GCS argues that this case raises technical issues on which the FCC has particular expertise and congressionally-delegated discretion. (Doc. 21 at 10-13.) It is true that Congress has delegated authority to the FCC to "prescribe regulations" implementing some of the requirements of the TCPA. 47 U.S.C. § 227(b)(2). It is also true that the FCC "possesses expertise over the statute it implements." Charvat v. EchoStar Satellite, LLC, 630 F.3d 459, 467 (6th Cir. 2010). But the interpretation of federal statutes is not a job reserved to the FCC exclusively; it is in fact squarely within the expertise of an Article III court.

1. **Application of the TCPA to Debt Collectors**

The provisions of the TCPA make clear that the FCC's

discretion to implement the Act is limited. GCS argues that the FCC is currently considering whether the TCPA "applies to non-telemarketing calls, such as debt-collection calls." (Doc. 21 at 2.) Besides the fact that the above-cited petitions for rulemaking do not substantiate this claim, this argument appears contradicted by the Act itself. The TCPA generally prohibits autodialed calls to residential landlines, 47 U.S.C. § 227(b)(1)(B); and the FCC has some authority to exempt certain autodialed calls to residential landlines, id. § 227(b)(2)(B). The FCC has in fact exercised this discretion to exempt debt-collection calls to residential landlines. See, e.g., Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 273 (3d Cir. 2013); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 566 n.49 (2008) [hereinafter 2008 TCPA Ruling]. The TCPA also generally prohibits autodialed calls to cell phones, 47 U.S.C. § 227(b)(1)(A)(iii); but the FCC's authority to create exemptions to this prohibition is substantially more limited, id. § 227(b)(2)(C). And the FCC has acknowledged as much. See 2008 TCPA Ruling, 23 F.C.C. Rcd. at 565.

In an attempt to show the need for the FCC's expertise on this matter, and the current lack of uniformity, GCS argues there is a split of authority on whether the TCPA applies to debt collection calls. GCS cites various cases meant to show

8

that some courts exempt debt collectors from the TCPA. (Doc. 21 at 15.) But the issue is not so simple. As shown above, there are clear exemptions for autodialed debt-collection calls to residential landlines, but not for autodialed debt-collections calls to cell phones. All of GCS's cases purporting to show a debt-collector exemption concern the landline provisions of the TCPA. But those cases are not directly relevant to the facts of this case, since Beiler complains of autodialed calls made to her cell phones. (Compl. ¶ 25.) As to any debt-collection exemption, GCS has failed to show a need to refer this case at this time because of the FCC's expertise or the need for uniformity.

### 2. Defining ATDS

The TCPA defines the term "automatic telephone dialing system" as equipment having "the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). GCS argues for a referral to the FCC to determine whether "'predictive dialing' is automatically an ATDS" and whether dialing equipment must have the "current capacity" rather than the "theoretical capacity" to dial random or sequential numbers to be deemed an ATDS. (Doc. 21 at 2, 11.) GCS correctly argues that YouMail and ACA International have petitioned the FCC for rulemaking on these issues. Other

9

similar petitions may also be pending. See, e.g., Trainor v. Citibank, Nat. Ass'n, No. CIV. 14-62 PAM/JSM, 2014 WL 2574527, at * 2 (D. Minn. June 9, 2014).

Yet, as Beiler points out, the FCC has recently affirmed its prior decisions, concluding against ACA International that "a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." 2008 TCPA Ruling, 23 F.C.C. Rcd. at 566. Moreover, in another case, where a district court issued a stay on these issues, the FCC responded to the court's request for a status report on the pending petitions. Counsel for the FCC reported to the court that it is not "in a position to predict when the Commission will vote to approve a final order" on the pending petitions. (Doc. 31-1 at 5.) Essentially, GCS's motion to refer this case invites an extended delay as to when, if ever, the FCC will overturn its own rules. See Trainor, 2014 WL 2574527, at *2 ("It may be that the FCC is poised to overturn its prior decisions, but given that this issue has been pending before the FCC for more than four years, when that new decision will issue is anyone's guess."). A referral to the FCC on the predictive dialing issue, therefore, would be too speculative.

A referral on the capacity issue would be similarly fruitless. As another court explained on a similar motion to stay,

> A district court is suited to resolve issues of statutory interpretation of the . . . term "capacity." While the doctrine of primary jurisdiction may be invoked in cases involving statutory interpretation, such situations typically involve resolution of an issue of first impression, or of a particularly complicated issue best resolved by the administrative agency. Interpretation of these statutory terms do not require the FCC's policy expertise or specialized knowledge and are matters safely within the conventional experience of judges. Indeed, courts and the FCC have interpreted these statutory terms in the past.

Pimental v. Google, Inc., No. C-11-02585-YGR, 2012 WL 1458179, at *3 (N.D. Cal. Apr. 26, 2012) (citations omitted).

Finally, in regard to both of these sub-issues, it is worth noting that, even if the FCC's expertise could be helpful and a need for uniformity exists that only the FCC can provide, neither issue may end up mattering in this case. Although Beiler has alleged that GCS autodialed her cell phone (Compl. ¶¶ 27, 30), GCS denies having used an ATDS to call her (Am. Answer ¶¶ 27, 30). GCS has also pled in the alternative that, even if it used an ATDS to call Beiler's cell phones, "all calls were made with prior express consent." (Id. at 7.) Discovery may show whether GCS used an ATDS to call Beiler. If discovery shows that GCS did not use an ATDS, however defined, then a referral would have accomplished nothing but unnecessary delay. If discovery shows that GCS did use an ATDS, then a referral would not have been dispositive because GCS may still show "prior express consent." Either way, a referral to the FCC

clarifying the definition of an ATDS is unwarranted at this stage.

### 3. Wrong Number Exemption

Finally, GCS seeks a referral for the FCC to determine "whether 'wrong number' non-telemarketing calls can give rise to a violation of the TCPA." (Doc. 21 at 3.) But GCS makes no effort to substantiate this request. The ACA International petition does not present this question directly, but seeks a safe harbor for such wrong-number calls. GCS fails to show that the current law is unclear on this question or that the FCC would even have the statutory authority to create the type of safe-harbor sought by ACA International. Therefore, GCS has not carried its burden of showing that a referral of this question to the FCC would aid the resolution of this case.

## III. CONCLUSION

For these reasons, GCS has failed to show that a stay under the primary jurisdiction doctrine is warranted at this stage of the litigation.

IT IS THEREFORE ORDERED that GCS's motion to stay this case under the primary jurisdiction doctrine (Doc. 20) be DENIED, and Beiler's motion to strike (Doc. 28) be DENIED as moot.

                        /s/   Thomas D. Schroeder
                      United States District Judge

November 3, 2014